**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

|                                                    |                          |
| -------------------------------------------------- | ------------------------ |
| MARVIN HOLD,                                       |                          |
| Plaintiff,                                         |                          |
| v.                                                 | No. 20-05130-SW-NKL-SSA  |
| KILOLO KIJAKAZI<br>Acting Commissioner of Social Security, |                  |
| Defendant.                                         |                          |

## ORDER

Plaintiff Marvin Hold seeks review of the denial by the Acting Commissioner of his application for Disability Insurance Benefits. For the reasons set forth below, the Court affirms the administrative decision.

### I.    BACKGROUND

On August 7, 2018, Plaintiff protectively applied for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434, alleging a disability onset date of August 13, 2015, when he was 45 years old. On February 14, 2019, the state agency denied the claim. Hold requested a hearing, and that was held on January 21, 2020.

Following the hearing, the Administrative Law Judge ("ALJ") found that Hold had the severe impairments of degeneration of the cervical, thoracic, and lumbar spine, bilateral carpal tunnel syndrome, status post release, a history of Rocky Mountain Spotted Fever, a history of CVA, bilateral hearing loss, borderline intellectual functioning, major depressive disorder, and adjustment disorder. However, as the ALJ observed, years after his alleged onset date, Hold had continued to perform farm work, which included feeding animals and operating a tractor, and to

1

hunt, fish, perform woodworking, mow the lawn using a riding mower, and vacuum, do dishes, and perform other household chores.

The ALJ concluded that Hold was capable of performing a light range of work and was not disabled, and denied Hold's claim on April 7, 2020.

## II.  STANDARD

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016).  "Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).  The Court must consider both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (quotation marks and citation omitted).  However, "as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted).

The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III.  DISCUSSION

Hold argues that the ALJ's residual functional capacity ("RFC") was not based on substantial evidence and that the ALJ did not properly weigh Hold's testimony.

The RFC is "the most a claimant can still do despite his or her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (quotation marks and citation omitted). The ALJ bears the responsibility of determining the RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

The ALJ concluded that Hold had the severe impairments of degeneration of the cervical, thoracic, and lumbar spine, bilateral carpal tunnel syndrome, status post release, a history of Rocky Mountain Spotted Fever, a history of CVA, bilateral hearing loss, borderline intellectual functioning, major depressive disorder, and adjustment disorder. Tr. 12. Nonetheless, the ALJ assessed Hold's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He can lift and carry 20 lbs. occasionally, 10 lbs. frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; and push and pull the same weight; no climbing ladders, ropes and scaffolding; Occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching and crawling; can perform frequent overhead reaching and occasional handling, fingering and feeling with bilateral upper extremities; can work in less than a loud working environment; must avoid concentrated exposure to extreme heat, vibrations and hazards such as unprotected heights and dangerous moving machinery. He can perform simple, routine, repetitive tasks in other than fast paced production environments.

Tr. 16.

Hold argues that the record lacked medical evidence supporting the ALJ's conclusion that Hold was capable of lifting up to twenty pounds or standing for up to six hours each day because the ALJ discounted the agency medical consultants' opinions that might have supported these findings. For the reasons discussed below, these arguments fail.

As a preliminary matter, although Hold repeatedly complains on appeal about the ALJ's finding that Hold could lift up to 20 pounds occasionally, Hold testified at the hearing that he would be able to lift 30 pounds on a good day and 20 pounds on a bad day if he had to do so for

two-and-a-half hours a day, with breaks. Tr. 78-79. Thus, the ALJ's finding on this point was fully supported.

As for whether the RFC more broadly was supported by substantial evidence, the Court notes first that an RFC need not be supported by medical opinions. *See Bowling v. Colvin*, No. 15-3080DGK, 2016 WL 3094064, at *2 (W.D. Mo. June 1, 2016) (noting that a medical opinion is not necessary to assess an RFC (citing *Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007))). In any event, while the ALJ rejected one medical consultant's opinion in its entirety, *see* Tr. 19 (finding one medical consultant's opinion that Hold could perform a medium range of work "not persuasive" and "not at all supported or consistent with the record as a whole," which showed that "the claimant [was] much more limited"), the ALJ did not discount the other medical consultant's opinion in its entirety.

With regard to the opinion of Dr. Duff, the ALJ stated:

Agency consultant John Duff, MD assessed this claim in February 2019 (1A), finding the claimant can perform light work with no other restrictions. This is somewhat persuasive. Based on record as whole, is somewhat supported and consistent. However, the undersigned finds the claimant considerably more limited. Later submitted evidence, including carpal tunnel syndrome and release surgery, as well as spinal imaging studies, support a greater degree of limitation, including postural and manipulative limitations.

Tr. 19. The ALJ found Dr. Duff's opinion not entirely persuasive because of "[l]ater submitted evidence" that suggested a greater degree of limitation—which evidence by definition Dr. Duff could not have relied on. Thus, the ALJ's decision to rely in part on Dr. Duff's opinion while providing for greater postural and manipulative limitations was consistent with the evidence in the record.

The regulations define 'light work' in relevant part as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves

4

sitting most of the time with some pushing and pulling of arm or leg controls." 20 CFR 404.1567(b). The ALJ's inclusion of "postural and manipulative limitations" that Dr. Duff had not suggested because of the new evidence concerning the carpal tunnel syndrome and release surgery and spinal imaging studies was reflected in the restriction against climbing ladders, ropes and scaffolding, limiting Hold to only occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, crawling, and handling, fingering, and feeling with bilateral upper extremities. The ALJ also found that Hold should avoid unprotected heights, dangerous moving machinery, and fast-paced production environments.

Although Hold had complained of pain and/or tingling in his arms or legs and pain in his back from June 2018 on—pain that he frequently rated a 4 or 5 but at least once rated an 8 (*see, e.g.,* Tr. 320, 323, 329, 334, 372)—his activities of daily living showed that he was capable of performing a wider range of actions than he has claimed in this proceeding. Hold testified that he performed multiple activities well after his alleged onset date (August 2015) that appear incompatible with his complaints. Hold testified that he performed farm work in 2018 and 2019, helping the farmer "when he needed me." Tr. 71-72; 89. He fed animals, drove a tractor "sometimes," monitored cows and calves, and did other farm work. He estimated that he performed that work for 2-3 hours a day, 5 days a week. When he was not helping on the farm, he tried to do chores around the house. Tr. 89. He did laundry, cleaned dishes, vacuumed, and mowed the lawn using a riding lawn mower. Tr. 90. He also did woodworking in his garage, building picture frames and shelves for himself or family, for two to three hours four or five days a week. Tr. 91-92. He ceased the woodworking in November 2019, but only because he did not feel like doing it anymore. Tr. 92. He also did catch-and-release fishing off the bank of a river for four or five hours perhaps ten times in 2019. He stated that, even in combination, he did not

perform these activities for eight hours or more on any given day. However, at least one of the medical notes from 2018 indicates that Hold was doing farm work for full days. Tr. 348 (noting in June 2018, three years after alleged onset date: "Pt works outdoors on a farm and is out in the sun *all day* when working" (emphasis added)). However, even if Hold did not regularly perform eight hours of work, these activities suggest that Hold was capable of performing a wider range of work than he has claimed. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (finding that "[i]nconsistencies between Julin's subjective complaints of disabling impairments and evidence concerning her daily living patterns also raised doubts" about the claim); *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (noting that activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with claimant's complaints of disabling pain (citation omitted)).

Given Hold's self-reported activities of daily living, which suggest regular employment in farming, the capacity to engage in woodworking, fishing alone along a river with a chair he would bring along, and hunting, and frequent performance of household chores, including lawn-mowing, washing dishes, laundry, and vacuuming, the Court finds that the RFC with respect to Hold's physical limitations was supported by substantial evidence in the record.

As Hold does not suggest that the RFC did not adequately account for any mental impairments, this ends the inquiry.

## IV. <u>**CONCLUSION**</u>

Because the ALJ's decision is supported by substantial evidence in the record, it is

AFFIRMED.

<u>s/ Nanette K. Laughrey</u>
NANETTE K. LAUGHREY
United States District Judge

Dated: <u>December 22, 2021</u>
Jefferson City, Missouri